# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GLENDA ALLEN-JONES,

    Plaintiff,

v.

GOVERNORS STATE UNIVERSITY AND
BOARD OF TRUSTEES OF GOVERNORS
STATE UNIVERSITY,

    Defendants.

No. 05 C 6046
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Glenda Allen-Jones has filed suit against Defendant Governors State University ("GSU"), alleging employment discrimination under Title VII. GSU has now filed this motion seeking summary judgment.

**FACTS**

GSU employed Allen-Jones as a University Lecturer from 2000 to 2005. University Lecturer is a temporary position for which GSU contracts with lecturers for certain academic periods.[1] At the end of her last contract, GSU offered Allen-Jones another contract from September 1, 2005 through December 31, 2005. This was a shorter period than the year-long contracts she had in preceding years. She believed that this type of contract was offered to faculty who are about to be terminated. She did not sign the contract or show up to teach her assigned classes. The contract was voided.

---

[1] Her contracts ran from August 16, 2000 – June 30 2001; July 1, 2001 – August 31, 2001; September 1, 2001 – August 31, 2002; September 1, 2002 – August 31, 2003; September 1, 2003 – August 31, 2003; September 1, 2003 – August 31, 2004; and, finally, September 1, 2004 – August 31, 2005.

Dean Russell told (or encouraged) her to apply for any available tenure track positions, but she did not do so.

Allen-Jones alleges her University Lecturer position was not converted to a tenure track position because of her race. According to Plaintiff, a Dean (Diane Alexander) verbally promised her that her position would be so converted upon receipt of her doctorate. Next, she alleges that her existing lecturer position was eliminated because of her race. She also claims her removal as Chair of the Early Childhood Student Progress Committee ("EC Committee") was due to her race. Lastly, she believes that her February 2005 performance evaluation was lower than previous evaluations due to her race.

GSU responds first by noting that a Dean has no authority to make such a promise; only the University president can do this. In addition, GSU says her lecturer position was terminated because the Division of Education needed another tenured faculty member in Elementary Education, and the College (of which the division is a part) could not afford to have two new tenure track positions. GSU also claims that the removal of Allen-Jones from the EC Committee took place because the Faculty Senate voted that the Chairs could only be filled by tenured faculty. Lastly, GSU argues that her evaluation (which GSU notes was "satisfactory") was due to her lack of the necessary two-year teaching experience in an early childhood setting.

## ANALYSIS

**Standard**

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.*

56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in Plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiff must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**Discrimination**

Unsurprisingly, Allen-Jones does not have direct evidence of discrimination with respect to her claims. Few employers in the 21st century would admit that they based a decision on race, and she could not offer any direct evidence at her deposition that race was a factor in the elimination of her position, her removal as Chair, or her evaluation. With respect to GSU's failure to convert her position to tenure track, she states that two academics – Larry Cross and Roger Oden – told her it was because of her race. However, the admissibility of this evidence is destroyed by the fact that neither man participated in the decision nor had personal knowledge of the reasons for that decision.

GSU puts forth three grounds for summary judgment. First, GSU argues that, with respect to some of the claims, there is no adverse employment action within the meaning of the law. "An adverse employment action must be materially adverse . . . ." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Actions such as a termination, a decrease in compensation or benefits or a downgrading of title and job duties is sufficient. Here, Allen-Jones focuses on the Chair position she lost, which meant she had to teach an additional course. Her Complaint fails on this point, though, because Chair position did not provide any extra compensation, and changing her work assignment

3

to one which Plaintiff enjoys less does not make the change material.² Additionally, her performance evaluation was satisfactory, so it is difficult to see how this is adverse action. It did mean that she did not receive a discretionary bonus, but that is not a legally adverse action. *Tyler v. Ispat Inland, Inc.*, 245 F.3d 969, 972 (7th Cir. 2001). These actions might serve as evidence of racial hostility, but they are not themselves actions for which the law offers compensation. The elimination of her position and the refusal to convert her position to tenure track are clearly adverse actions.

GSU also says there is no similarly situated employee who received more favorable treatment. According to Allen-Jones, there is one white female whose Lecturer position was not eliminated. GSU notes, without contradiction, that her position was eliminated, but, because of her greater seniority and experience in special education, this person was permitted to remain as a lecturer teaching in a different program area, so she was not actually similarly situated. Another white female did have her position converted to tenure track, but she benefitted from a need in the Reading program, which was her specialty. Plaintiff also has a background in Reading. Although the other white female also received an oral promise of conversion, she also had a written contract providing for conversion. Two other white male faculty members, who had the same oral promise of conversion from the same Dean that promised Plaintiff, also had their position eliminated. They later received tenure track position by applying for them – the same process that was open to Allen-Jones.

Finally, GSU says there is no evidence that its reasons were pretextual. Removal from the Chair was the result of faculty senate rules, the evaluation was the result of Plaintiff not having the

---

²I do note the apparent irony of a complaint about not getting a tenure track position from a teacher whose definition of an adverse action is being required to teach a course rather than chair a committee.

experience, the verbal promise was not authorized, and the school did not have enough money for two tenure track positions. There is no evidence, they say, other than bare opinion, that these reasons were not the real reasons.

The concrete facts are undisputed.[3] Plaintiff only added that her last evaluation (given by the same person who had previously given her better evaluations), while satisfactory, was substandard by her expectations since she had won several awards for her "outstanding and overall teaching abilities." She also says that her ranking changed after she "inquired as to [the] failure to convert her University Lecturer position to a tenure track faculty position." The letter she was sent encouraging her to apply for a tenure track position "failed to give Plaintiff sufficient notice that the University lecturer position would be eliminated." The heart of her case is that she had reasonable expectations of getting a tenure track position based on the apparent (but not real) authority of the dean who promised it. She was not given sufficient notice of various changes that were to occur, and she was the only faculty member to which this happened.

Plaintiff's indirect proof fails as well. GSU has offered evidence from which I can reasonably conclude that two white females who did better than Plaintiff are not similarly situated.[4]

---

[3]GSU objects to some of Plaintiff's Statement of Additional Facts. Some of the objections are valid in the sense that the assertions are actually Plaintiff's perception of the facts at various points in time, e.g. that Plaintiff, upon receiving her last contract, "was forced to find alternative employment" or that she relied on a verbal promise of tenure. As a statement of perception, I accept it as true. There are other statements of perception that, true or not, are irrelevant, e.g. that she was selected after a national search (GSU notes the search was for another position for which she was not selected). The cited record support (or in some cases the absence of support) does not justify the assertions of fact made in Paragraphs 60, 61, 65 (second sentence), 66, 68, 69, 71, 72, 73, 74, 75, 76, 77 and 78. Many of these statements are inferences – suitable for argument, but not actually facts supported by record references.

[4]Mary Chladek survived the elimination of her position, but she had greater tenure than Plaintiff and special education teaching experience which Plaintiff did not possess. Nina Nilsson

As the summary judgment record stands, Marcus Ahmed, who evaluated Allen-Jones and was familiar with her and the other comparators, offered an affidavit which states non-discriminatory reasons for the events which are the subject of this suit. There is no evidence, short of Plaintiff's personal opinion, to conclude that a reasonable finder of fact could deem that there was pretext. Much of Plaintiff's resistance to summary judgment is based on the assumption that GSU's evidence could have been better. The evidence is adequate and no real effort was made to refute it. Plaintiff did not seek any of the statistics and the depositions of other GSU personnel that she says should have been offered by GSU.

Allen-Jones passed up opportunities to secure evidence supporting her claim (both during litigation and at the time she was invited to apply for tenure), and she has to live with the consequences of those decisions. GSU and its Board of Trustees' motion for summary judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: Jun 14, 2007

---

had a more appropriate background (in Reading and actual teaching) than did Plaintiff and she, unlike Plaintiff, had a binding written contract for tenure. The two male comparators lost their positions and had to apply for tenure positions, which they received. This is a substantial differentiation from Plaintiff who had the same opportunity to apply but did not do so. If her claim is valid (as opposed to being unprovable) it was unwise of her to decline the application. Denial of her application might have provided some evidence supporting her claim.